UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEPHEN LAMONT EARLY,

        Petitioner,

v.                                  Case No. 3:19-cv-735-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

---

## <u>ORDER</u>

### I. Status

Petitioner Stephen Early, an inmate of the Florida penal system, initiated this action in the United States District Court Northern District of Florida on June 10, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). The Northern District transferred the action to the Middle District on June 17, 2019. Doc. 3. In the Petition, Early challenges a 2014 state court (Bradford County, Florida) judgment of conviction for second-degree murder. Early asserts four grounds as his basis for seeking relief. See Petition at 5-11.[2] Respondents oppose the Petition. See

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

Response to Federal Habeas Petition (Response; Doc. 11) with exhibits (Resp. Ex.). Early filed a brief in reply. <u>See</u> Reply to State's Response (Reply; Doc. 16). This case is ripe for review.

## II. Relevant Procedural History

On October 23, 2014, a jury convicted Early of second-degree murder, with a special finding that Early committed the offense with a weapon. Resp. Ex. 1. The trial court sentenced Early to a term of incarceration of twenty years and six months in prison. <u>Id.</u> Early appealed his conviction and sentence to Florida's First District Court of Appeal (First DCA). Resp. Ex. 2. In his initial brief, Early argued that the trial court erred when it:  (1) denied his motion to dismiss; (2) denied his motion for judgment of acquittal; (3) failed to instruct the jury that Early could not be found guilty if the killing was justifiable or excusable; and (4) failed to conduct a <u>Nelson</u>[3] inquiry after Early made an unequivocal request for a hearing. Resp. Ex. 3. The State filed an answer brief, Resp. Ex. 4, and Early filed a reply brief, Resp. Ex. 5. On March 3, 2017, the First DCA, in a written opinion, affirmed Early's conviction and sentence. Resp. Ex. 6. The First DCA issued the mandate on March 21, 2017. Resp. Ex. 7.

---

[3] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

2

Early filed a pro se motion to modify his sentence under Florida Rule of Criminal Procedure 3.800(c) on April 26, 2017. Resp. Ex. 8. On May 20, 2017, the postconviction court denied relief. Id. The following month, on June 30, 2017, Early filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. 9. In the Rule 3.850 Motion, Early alleged his counsel was ineffective for failing to:  (1) properly preserve a sufficiency of the evidence claim for appellate review; (2) move to suppress his statements to police; and (3) request a "heat of passion" jury instruction. Id. The postconviction court initially denied relief on grounds one and three but ordered the State to respond to ground two. Resp. Ex. 10. Thereafter, the postconviction court denied relief on ground two. Resp. Ex. 15. On February 20, 2019, the First DCA per curiam affirmed the denial of relief without a written opinion, Resp. Ex. 18, and issued the mandate on March 20, 2019, Resp. Ex. 19.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to

grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Early's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks

4

omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on

an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the

state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter,

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity,"

> the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

petitioner can establish that a fundamental miscarriage of justice, the
continued incarceration of one who is actually innocent, otherwise would
result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice,
> there remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. Johnson v. Alabama, 256 F.3d 1156, 1171
> (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that
it is more likely than not that no reasonable juror would have convicted him'
of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir.
2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be
credible,' a claim of actual innocence must be based on reliable evidence not
presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting
Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases,
allegations of actual innocence are ultimately summarily rejected. Schlup, 513
U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not

> disturb a state-court decision denying the claim.
> Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One[8]

In Ground One, Early alleges that his trial counsel was deficient for failing to move to suppress the statements he made to police. Petition at 5-6. Early maintains that the Miranda warnings the interrogating officer gave were deficient because the officer did not advise him that he could stop answering questions at any time to talk to an attorney. Id. He also asserts that his waiver of rights did not comply with Florida Rule of Criminal Procedure 3.111(d) because only one witness attested to the waiver of his rights. Id. at 6.

---

[8] Early divides Ground One of the Petition into three subgrounds, which the Court will treat as separate grounds for relief in this Order.

Early raised a similar claim in state court as ground two of his Rule 3.850

Motion. Resp. Ex. 9 at 8-9. In denying relief, the postconviction court explained:

> Ground II of Defendant's motion for post-conviction
> relief was a claim of ineffective assistance of counsel
> for failing to challenge the Miranda predicate.
> Defendant argues that the Miranda warnings he
> received failed to inform him that he had the right to
> counsel during questioning. Defendant received
> Miranda warnings at the crime scene from a pre-
> printed card and read a Miranda warning form at the
> station. The Court ordered the State to produce the
> warnings, so their sufficiency could be evaluated. The
> State complied with the order to show cause and filed
> the pre-printed Miranda warning card, with an
> attestation that this card had been utilized by the
> Starke Police Department since 2008. In addition, the
> State filed the Miranda form signed by Defendant at
> the police station, and affirms that the form was
> provided to defense counsel during discovery in June
> 2013. Finding that both the pre-printed card and
> Miranda form advise of the right to counsel prior to,
> and during, questioning, Ground II is raised without
> merit.

Resp. Ex. 15 (record citations omitted). The First DCA per curiam affirmed the

denial of relief without a written opinion. Resp. Ex. 18.

To the extent that the First DCA decided this claim on the merits,[9] the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

---

[9] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Early is not entitled to relief on the basis of this claim.

The record reflects that the Starke Police Department customarily used a LexisNexis two-sided card that listed a suspect's <u>Miranda</u> warnings. Resp. Ex. 17. Among the warnings on the card was: "You have the right to consult with an attorney and have an attorney present during questioning." <u>Id.</u> Notably, the State also provided the <u>Miranda</u> waiver form that Early signed. <u>Id.</u> That form advised Early he had "the right to talk to a lawyer for advice before being questioned and [he had] the right to have him with [Early] while being questioned." <u>Id.</u> It informed Early that if he wanted "to answer questions now without a lawyer present, [he would] still have the right to stop answering at any time" and talk to a lawyer. <u>Id.</u> As such, the record refutes this claim. Regarding Rule 3.111(d), this rule applies to a defendant's right to waive counsel and by its own terms is inapplicable to <u>Miranda</u> warnings. Counsel cannot be deficient for failing to raise a meritless argument. See <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); <u>Bolender v.</u>

16

<u>Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Accordingly, relief on the claim in Ground One is due to be denied.

## B. Ground Two

Early asserts that his trial counsel was ineffective for failing to preserve a sufficiency of the evidence argument for appellate review via a motion for judgment of acquittal. Petition at 6-8. According to Early, the State failed to prove that he committed the murder with a "depraved mind," an element of second-degree murder. <u>Id.</u> He maintains that the facts show only that he acted impulsively and not "with ill will, hatred, spite, or evil intent." <u>Id.</u> at 7.

Early raised a similar claim in his Rule 3.850 Motion. Resp. Ex. 9 at 5-8. The postconviction court denied relief, writing:

> In order to grant a motion for judgment of acquittal, the evidence presented at trial must be legally insufficient to support the elements of the crime. <u>See Perez v. State</u>, 187 So. 3d 1279, 1281 (Fla. 1st DCA 2016). Defendant has failed to satisfy the prejudice prong of <u>Strickland</u>. Even if counsel had made a motion for judgment of acquittal, it is unlikely that Defendant would have prevailed. <u>Perez</u>, 187 So. 3d at 1281 ("If the evidence, when considered in the light most favorable to the State, is capable of supporting a guilty verdict, a motion for judgment of acquittal must be denied.").
>
> Defendant claims that the State failed to present any evidence of a depraved mind, required to

17

uphold a conviction for second-degree murder. Defendant argues that his is a case of impulsive overreaction, and the State's evidence, at best, supports a conviction for manslaughter. Second-degree murder is the "unlawful killing of a human being, when perpetrated by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04, Fla. Stat. (2012). "An act is imminently dangerous to another and evinces a 'depraved mind' if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) is done from ill will, hatred, spite or an evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life." Dorsey v. State, 74 So. 3d 521, 524 (Fla. 4th DCA 2011) (citing Wiley v. State, 60 So. 3d 588, 591 (Fla. 4th DCA 2011)). Although a jury may reject a defendant's theory of self-defense, an impulsive overreaction to an attack or injury is insufficient to prove the depraved mind element, which is required to sustain a conviction of second-degree murder. See Dorsey, 74 So. 3d at 524; Poole v. State, 30 So. 3d 696, 698-99 (Fla. 2d DCA 2010); McDaniel v. State, 620 So. 2d 1308 (Fla. 4th DCA 1993).

What distinguishes Defendant's case from the impulsive overreaction cases is his multiple, conflicting stories. In Poole, Dorsey, McDaniel, etc., there was no conflicting evidence, which required the jury to believe the defendants' version of events; thereby, the use of deadly force "could only be explained as an 'impulsive overreaction' to an attack." Leasure, 105 So. 3d at 17. In the instant case, Defendant told several versions of the events, putting his credibility at issue. Further, the State presented evidence that conflicted with Defendant's claim that he was attacked or injured by the victim, and presented a previous statement from Defendant that

18

he raised two knives before inflicting the fatal stab to the chest.  "This is not to say malice is . . . limited in its meaning to hatred, ill will and malevolence; rather, it denotes a wicked and corrupt disregard of the lives and safety of others . . . a failure to appreciate social duty." Antoine v. State, 138 So. 3d 1064, 1073 (Fla. 4th DCA 2014) (quoting Larsen v. State, 485 So. 2d 1372, 1374 (Fla. 1st DCA 1986)) (internal quotation omitted). Thus, Ground I is raised without merit.

Resp. Ex. 15 (record citations omitted). The First DCA per curiam affirmed the denial of relief without issuing a written opinion. Resp. Ex. 18.

To the extent that the First DCA decided the claim on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Early is not entitled to relief on the basis of this claim.

Early's claim of prejudice revolves entirely around the failure to preserve this issue for appeal. However, "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial in a case [where an issue was raised but not properly preserved]." Carratelli v. Stepp, 382 F. App'x 829,

19

832 (11th Cir. 2010). Accordingly, the state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law.

To the extent the claim could be construed as asserting prejudice at the trial level, Early is still not entitled to relief. In Florida, second-degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. To prove a depraved mind, the State must produce evidence showing that a defendant acted with "ill will, hatred, spite, or an evil intent." Peoples v. State, 251 So. 3d 291, 302 (Fla. 1st DCA 2018).

The record reflects that Early stabbed the victim twice with a knife to the left lateral chest wall. Resp. Ex. 6. Early gave several accounts of what occurred, including that the victim stabbed himself, an unknown man stabbed the victim, and that Early stabbed the victim in self-defense while the victim punched him. Id. At trial, Early testified that he was in a romantic relationship with the victim, and they had a history of disputes and Early was getting tired of the relationship. Id. According to Early, he and the victim got in a dispute before the incident. Id. Early's trial testimony maintained that he was acting in self-defense. Id. However, Early had no injuries. Resp. Ex. 15 at 10. Nor did

20

the victim have injuries on his fists or hands that would have been consistent with the victim striking someone. Id. at 12. As the First DCA summarized in its opinion affirming Early's conviction and sentence, the evidence supported a "plausible scenario . . . that [Early] brought the knife to the vehicle, got into an argument with the victim, and stabbed the victim as he was preparing to drive away." Resp. Ex. 6.

This record shows that there was ill-will between Early and the victim. A reasonable person would understand that stabbing another person would lead to death or great bodily harm. Thus, Early's act of stabbing the victim, coupled with the evidence indicating animosity and ill-will generated from their deteriorating relationship, support the depraved mind element of a second-degree murder conviction. Therefore, there was sufficient evidence, when taken in a light most favorable to the prosecution, to allow the jury to determine that Early acted with a depraved mind. See Peoples, 251 So. 3d at 303 (noting that appellant's use of a deadly weapon to stab the victim was an act "which itself could be sufficient to infer the requisite intent" to support a second-degree murder conviction). As such, Early cannot demonstrate prejudice and relief on his claim in Ground Two is due to be denied.

## C. Ground Three

Next, Early contends that his trial counsel failed to request a special "heat of passion" jury instruction. Petition at 8-10. Early maintains that

evidence at trial supported this instruction. Id. He asserts that the evidence

showed he had a complicated relationship with the victim, he and the victim

had previous altercations, the incident was a sudden event, and the victim was

the aggressor. Id. According to Early, had this instruction been read, it would

have negated the "depraved mind" element of second-degree murder. Id.

     In the Rule 3.850 Motion, Early raised a similar claim. Resp. Ex. 9 at 10-

13. The postconviction court denied relief, explaining:

> In support of his third claim, Defendant argues that
> counsel was ineffective for failing to request a heat of
> passion jury instruction. "Heat of passion negating the
> depraved mind element of second degree murder is a
> valid defense in Florida." Palmore v. State, 838 So. 2d
> 1222, 1223 (Fla. 1st DCA 2003) ("Although not
> constituting excusable homicide, heat of passion under
> this theory of defense would reduce second degree
> murder to manslaughter if accepted by the jury.").
> "Heat of passion" has been defined as:
>
>> A killing in the 'heat of passion' occurs
>> when the state of mind of the slayer is
>> necessarily different from that when the
>> killing in [sic] done in self-defense. In the
>> heat of passion the slayer is oblivious to
>> his real or apparent situation. Whether he
>> believes or does not believe that he is in
>> danger is immaterial; it has no bearing
>> upon the question. He is intoxicated by his
>> passion, is impelled by a blind and
>> reasoning fury to redress his real or
>> imagined injury, and while in that
>> condition of frenzy and distraction fires
>> the fatal shot.

> Disney v. State, 72 Fla. 492, 73 So. 598, 601 (1916);
> See also Daley v. State, 957 So. 2d 17, 18 (Fla. 4th DCA
> 2007). The heat of passion instruction is only to be
> given "if there is evidence that the defendant acted in
> the heat of passion on legally adequate provocation."
> In re Standard Jury Instructions in Criminals Cases -
> Report No. 2013-02, 137 So. 3d 995, 1011 (Fla. 2014)
> (italics omitted). Defendant has failed to show legally
> adequate provocation entitling him to the requested
> jury instructions. See Daley v. State, 957 So. 2d at 18
> ("Without more, there was no evidence to support the
> theory, and counsel was not ineffective for failing to
> request the instruction, particularly when the main
> defense was that of self-defense").

Resp. Ex. 10 at 4-5. The First DCA affirmed the denial of relief. Resp. Ex. 18.

To the extent that the First DCA decided the claim on the merits, the Court will address it in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Early is not entitled to relief on the basis of this claim.

"In order for the defense of heat of passion to be available there must be 'adequate provocation . . . as might obscure the reason or dominate the volition of an ordinary reasonable man.'" Paz v. State, 777 So. 2d 983, 984 (Fla. 3d DCA

2000) (quoting <u>Rivers v. State</u>, 75 Fla. 401, 78 So. 343, 345 (1918)). Mere arguments are insufficient to establish adequate provocation. <u>Reed v. State</u>, 287 So. 3d 606, 609 (Fla. 4th DCA 2019). "'Passion is the state of mind when it is powerfully acted on and influenced by something external to itself. It is one of the emotions of the mind known as anger, rage, sudden resentment, or terror.'" <u>Taylor v. State</u>, 316 So. 3d 420, 427 (Fla. 1st DCA 2021) (quoting <u>Febre v. State</u>, 30 So. 2d 367, 369 (Fla. 1947)).

The First DCA summarized Early's trial testimony in its order affirming his conviction and sentence:

> [Early] and the victim were romantically involved, and had a history of disputes that sometimes turned physical but had previously involved only use of bare hands, no weapons. He considered his partner possessive and was tiring of the relationship. On the night in question, the couple were living at a hotel, but Appellant had been out of town visiting family and friends, and the victim-apparently-did not like being left behind.
>
> When he returned to the hotel, Appellant called the victim to let him know that he was outside. Appellant went inside to use the bathroom, and the victim walked outside and got into the driver's seat of the car. When Appellant came out, he got in the back seat of the vehicle. Appellant said he wanted to go back to his mother's house, and the victim said he would take him. When Appellant called his mother and told her that he was coming home, the victim turned around in the driver's seat and began punching Appellant repeatedly in the head. Appellant leaned down to try to grab the door latch so he could get out of the vehicle, and as he felt around, he found a knife

on the floor. According to Appellant, the victim's repeated blows prevented him from opening the door. Appellant was afraid he was going to be seriously injured. While the victim was still striking him, Appellant "jabbed" the victim with the knife to stop the attacks. Because the victim continued hitting him, he "jabbed" the victim again with the knife; and after that, the attacks ended. When he saw that the victim was injured, Appellant called 911.

Resp. Ex. 6. Nothing from this testimony, or from Early's previous statements as outlined in the First DCA's opinion, provide evidence that Early acted in the heat of passion when he killed the victim. The fact they had a history of arguments or had an argument that night does not support giving the instruction. See Reed, 287 So. 3d at 609. Nothing in the record suggests that there was adequate provocation that would have overtaken Early's volition to control his actions. Similarly, Early points to no evidence showing that he was so overcome with anger, rage, or terror that he then killed the victim. See Taylor, 316 So. 3d at 427. Also, the record contains no evidence that he lost control or did not know what he was doing. As such, the evidence would not have supported reading the instruction. Counsel cannot be deficient for failing to raise a meritless argument. Therefore, relief on the claim in Ground Three is due to be denied.

## D. Ground Four

Last, Early argues that the cumulative impact of counsel's deficient performance led "to a true inconsistent jury verdict" and a manifest injustice.

25

Petition at 11. As Respondents note, Early failed to raise this issue in state court. Early, recognizing his failure to exhaust, contends his failure to exhaust should be excused under Martinez v. Ryan. Petition at 11. Whether or not Early exhausted this claim, he is not entitled to relief. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As explained in greater detail above, each of Early's claims are meritless. It follows then, that his claim of cumulative error is likewise without merit. Accordingly, the claim in Ground Four is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Early seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Early "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell,

26

537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Early appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

27

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of January, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:     Stephen Lamont Early #G24401
         Counsel of record